United States District Court
Southern District of Texas
**ENTERED**
March 30, 2018
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| LARRY EARL YOUNG, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:17-CV-339 |
| | § | |
| RONALD FERRELL, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION
TO GRANT DEFENDANTS' MOTION TO DISMISS**

Plaintiff Larry Earl Young is a Texas inmate appearing *pro se* and *in forma pauperis*. In this prisoner civil rights action filed pursuant to 42 U.S.C. § 1983, Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs in connection with the failure to replace his broken dentures. Pending before the Court is Defendants' Motion to Dismiss. (D.E. 12). For the reasons stated herein, it is respectfully recommended that the Court **GRANT** Defendants' motion.

**I.     JURISDICTION**

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II.    BACKGROUND

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID).  The facts giving rise to Plaintiff's claims in this case occurred in connection with Plaintiff's current assignment to the Garza East Unit (GEU) in Beeville, Texas.

Plaintiff named the following prison officials as defendants in his original complaint: (1) Dr. Ronald Ferrell, a dentist; and (2) Rudy A. Martisek, Practice Manager. Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs by failing either to investigate or properly advise the Dental Utilization Quality Review Committee (Committee) about the circumstances surrounding Plaintiff's broken dentures.  After a *Spears*[1] hearing was conducted on November 16, 2017, the undersigned ordered service of Plaintiff's complaint on Dr. Ferrell and Mr. Martisek (collectively referred to hereinafter as "Defendants").  (D.E. 9).

### A.    Plaintiff's Allegations

The following representations relevant to Plaintiff's deliberate indifference claims were made either in Plaintiff's original complaint (D.E. 1) or at the *Spears* hearing: Plaintiff first came into TDCJ custody in 1993 pursuant to a drug conviction where he was sentenced to twenty-five years' imprisonment.  Around 1994 or 1995, Plaintiff had nine or ten upper teeth pulled.  He then had his missing teeth replaced in 1995 with partial dentures prepared by the TDCJ.  Plaintiff also has two bottom teeth missing but

---

[1] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

has not replaced them with any dentures. Plaintiff testified that, while he has no other health problems, he eats slowly and cannot chew on certain foods like apples or corn on the cob.

Plaintiff was first released on parole sometime in 1998. Plaintiff spent the next several years either on parole or in prison. In September 2013, Plaintiff returned to TDCJ custody on a parole violation and was sent to the Havens Unit in Brownwood, Texas, to participate in a six-month drug program. In March 2014, while Plaintiff was confined at the Havens Unit, a prison official named Officer Sikes stepped on and broke Plaintiff's dentures while performing night rounds. Prison officials from the Havens Unit's medical/dental unit, however, did not replace the dentures since Plaintiff was two weeks from being released. Plaintiff was given the broken pieces to take home.

Plaintiff returned into TDCJ custody on August 5, 2016 due to a parole violation and is currently housed in the GEU. Plaintiff proceeded to advise Dr. Ferrell what had happened with his dentures. Dr. Ferrell did not indicate whether Plaintiff needed dentures and referred Plaintiff's case to the Dental Quality Review Committee (Committee). Dr. Ferrell, however, failed to inform the Committee exactly how his dentures were broken. Plaintiff could not remember if Dr. Ferrell made any recommendations to the Committee about whether Plaintiff needed dentures. Mr. Martisek advised Plaintiff that he would look into Plaintiff's situation and present all relevant documents to the Committee on Plaintiff's behalf. Mr. Martisek, however, did not fulfill his promise, and the Committee ultimately denied Plaintiff's request for replacement dentures.

On July 25, 2017, Plaintiff filed a Step 1 grievance seeking to obtain replacement dentures. (D.E. 1-1, pp. 1-2). Mr. Martisek rejected the grievance, finding that: (1) Dr. Ferrell had assisted with Plaintiff's request for replacement dentures; (2) the Committee had denied the request and instead recommended a mechanically-blended diet; (3) Plaintiff had refused the option for a mechanically-blended diet; and (4) the Committee had instructed Plaintiff to resubmit his request for denture fabrication in six months. (D.E. 1-1, p. 2). Plaintiff subsequently filed a Step 2 grievance on September 21, 2017, which was denied for essentially the same reasons. (D.E. 1-1, pp. 3-4).

After the Committee denied Plaintiff's request for replacement dentures, Dr. Ferrell offered to help Plaintiff with his mechanically-blended diet. Plaintiff acknowledged at the *Spears* hearing, however, that he had refused to be placed on such a diet. Plaintiff is currently on a regular meal plan. He experiences difficulty eating his food in a timely manner and cannot chew his meals properly. He further states that his weight fluctuates up and down.

**B.   Defendants' Motion to Dismiss and Subsequent Telephone Conferences**

On January 5, 2018, Defendants filed a Motion to Dismiss pursuant to Federal Ruled of Civil Procedure 12(b)(1) and 12(b)(6). (D.E. 12). Plaintiff subsequently filed his response to the motion to dismiss. (D.E. 17).

On January 26, 2018, the undersigned conducted a telephone status conference with the parties. Plaintiff and Defendants' counsel clarified that the University of Texas Medical Branch (UTMB) first provided him with dentures in 1995. Plaintiff also stated that he no longer has possession of his dentures as they were "so messed up."

Defendants' counsel informed the Court that the Committee had reviewed Plaintiff's case, concluding that Plaintiff had failed to meet the requirements under the current policy to be provided with dentures.  Plaintiff clarified that he only seeks injunctive relief in the form of having his dentures replaced.  Before scheduling a follow-up telephone conference, the undersigned allowed Defendants' counsel thirty days to contact the proper decision-making authority in order to acquire any additional information about Plaintiff's situation.

On February 26, 2018, the undersigned conducted a second telephone status conference with the parties.  Defendants' counsel indicated that she had obtained the current policies for dental care decisions as well as the policies in effect in 1995.  Counsel stated, however, that she needed additional time to acquire the affidavits necessary to authenticate the relevant policies.

A follow-up telephone status conference was conducted on March 12, 2018, at which time Defendants' counsel informed the Court that she had not yet obtained the authenticating affidavits.  The undersigned directed Defendants' counsel to file the policies with the Court and supplement with authenticating affidavits at a later time.  Plaintiff informed the Court that, while his dentures had been replaced in 2004, the Committee recently denied him replacement dentures as "medically unnecessary."

On March 21, 2018, the Office of the Attorney General of the State of Texas (OAG) filed an *Amicus Curiae* Advisory in which it attached the relevant dental policies as well as the authenticating affidavits.  (D.E. 19).

### III. LEGAL STANDARD

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988).

Under Rule 12(b)(1), a case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (citing *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1887 (2d Cir. 1996)). Lack of subject matter jurisdiction may be found in three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). Once the subject matter jurisdiction has been challenged, the party asserting jurisdiction retains the burden of proof that jurisdiction truly does exist. *Id*.

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its *face*.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678.  When considering a motion to dismiss, district courts are "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

## IV.   DISCUSSION

### A.   Eleventh Amendment (Prospective Injunctive Relief)

The Eleventh Amendment does not bar a plaintiff's claim for prospective injunctive relief.  *Ex parte Young*, 209 U.S. 123 (1908) (establishing exception to Eleventh Amendment immunity in cases where the alleged constitutional violation is caused by a state official's actions or refusal to act within the authority of his or her office).  Pursuant to Rule 12(b)(1), Defendants contend that the *Ex parte Young* exception does not apply in this case and that Plaintiff's claim for injunctive relief against them in their official capacities is barred by the Eleventh Amendment.  (D.E. 12, pp. 5-6).

Plaintiff seeks prospective injunctive relief only in the form of having his dentures replaced.[2]  As discussed below, Plaintiff has failed to state a plausible deliberate indifference claim that would entitle him to prospective injunctive relief.  The undersigned respectfully recommends, therefore, that Plaintiff's claims for injunctive relief against Defendants in their official capacities be dismissed with prejudice.

---

[2] Defendants further seek dismissal of Plaintiff's claim for monetary damages against Defendants in their official capacities as barred by the Eleventh Amendment.  (D.E. 12, pp. 4-5).  As Plaintiff only seeks injunctive relief in this action, it is unnecessary to consider this Eleventh Amendment argument.

### B. Deliberate Indifference Claims

In their Motion to Dismiss, Defendants contend that Plaintiff has failed to state an Eighth Amendment violation because Plaintiff has alleged neither a serious risk of harm to his health nor that Defendants were subjectively aware of a risk of harm to his health. (D.E. 12, pp. 8-10). Defendants further contend that: (1) allegations of Dr. Ferrell's failure to advise the committee of the events leading to Plaintiff's broken dentures is, at best, a claim for negligence or malpractice; and (2) Mr. Martisek's alleged failure to investigate and provide documents to the Committee is insufficient to state a constitutional violation. (D.E. 12, pp. 10-11).

In his response, Plaintiff reiterates that he only seeks replacement of his dentures. (D.E. 17). Plaintiff further refers to the dental care policy applicable in the "early 2000s" at which time his dentures were replaced when an officer was at fault. (D.E. 17).

An Eighth Amendment violation occurs when a prison official is deliberately indifferent to an inmate's health and safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The test for deliberate indifference has both an objective and subjective prong. Under the objective prong, the inmate "must first prove objective exposure to a substantial risk of serious harm." *Trevino v. Livingston*, No. 3:14-CV-52, 2017 WL 1013089, at *3 (S.D. Tex. Mar. 13, 2017) (citing *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006)). To prove the subjective prong of the deliberate indifference test, the inmate "must show both: (1) that the defendant was aware of facts from which the inference of an excessive risk to the [inmate's] health or safety could be drawn; and (2) that the defendant actually drew the inference that such potential for harm existed."

8 / 13

*Trevino*, 2017 WL 1013089, at *3 (citing *Farmer*, 511 U.S. at 397 and *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999)).

In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert*, 463 F.3d at 346 (internal quotation marks and citation omitted). The deliberate indifference standard "is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346.

Defendants have submitted the following relevant UTMB policies in support of their motion to dismiss: (1) UTMB Policy No. E-36-1, dental treatment policy in effect from January 1, 1995 through December 31, 1995 (D.E. 19, pp. 5-11); and (2) UTMB Policy E-36-4, dental treatment policy in effect from May 25, 2017 through December 31, 2017 (D.E. 19, pp. 13-22). In taking judicial notice of these policies, the undersigned may consider them in deciding the present motion to dismiss without converting it into a summary judgment motion. *See Jathanna v. Spring Branch Independent School Dist.*, No. H-12-1047, 2012 WL 6096675, at *3, n.1 (S.D. Tex. Dec. 7, 2012); *Prison Legal News v. Livingston*, No. C-09-296, 2010 WL 1610109, *6, n.4 (S.D. Tex. Apr. 21, 2010).

Plaintiff received partial dentures pursuant to the UTMB dental treatment policy in effect in 1995. Under that policy, determinations regarding whether to provide dentures

hinged primarily on the "number of posterior teeth to masticate a regular diet." (D.E. 19, p. 8). The 1995 dental treatment policy did not mention the inmate's nutritional status as a factor in determining whether dentures were medically necessary.

The 2017 dental treatment policy in contrast identifies the inmate's nutritional status as an important factor in considering whether dentures are medically necessary. The current policy authorizes health care providers to consider special diets, such as a mechanical soft diet, for inmates with mastication issues as a result of missing teeth. (D.E. 19, p. 14). Furthermore, the policy explains that "most foods are quite easily digested with minimal mastication and there is little likelihood that dentures will ameliorate pre-existing gastro-intestinal problems." (D.E. 19, p. 14).

The fact that Plaintiff previously was provided dentures under the 1995 policy does not equate to an allegation of a serious medical need for dentures at the present time. According to Plaintiff's complaint and testimony at the *Spears* hearing, the Committee considered Plaintiff's nutritional status when denying Plaintiff's request for replacement dentures under the 2017 policy and instead recommending a mechanically-blended diet. Plaintiff testified at the *Spears* hearing that he has no current health issues even though his weight fluctuates up and down. Plaintiff's testimony further reflects that, while he has trouble chewing certain foods, he made the decision not to comply with the Committee's recommendation to be placed on a mechanically-blended diet.

Plaintiff, therefore, alleges nothing to indicate a serious risk of harm to his health due to being denied replacement dentures under the 2017 policy. *See Bell v. Louisiana Dep't of Public Safety and Corrections*, 685 F. App'x 327 (5th Cir. 2017) (per curiam)

(concluding that the plaintiff's allegation he was denied dentures pursuant to prison policy fails to state an Eighth Amendment deliberate indifference claim because he did not "identify a specific, substantial risk of serious harm to his health that prison officials have knowingly or wantonly disregarded"). His allegations, at best, amount to his disagreement with the Committee's medical decision, which fails to state an Eighth Amendment claim of deliberate indifference. *See id.* (citing *Varnado v. Lynaugh*, 920 F.3d 320, 321 (5th Cir. 1991)).

Plaintiff further alleges no facts to suggest that either Defendant was subjectively aware of a serious risk to Plaintiff's health. First, Plaintiff testified that he informed Dr. Ferrell that his dentures were broken by a prison official and were not repaired. Plaintiff, however, relayed no information to suggest to Dr. Ferrell that Plaintiff's lack of dentures placed him in any health danger. Plaintiff alleges nothing to indicate that Dr. Ferrell ever believed dentures to be medically necessary for Plaintiff and then willfully failed to inform the Committee of Plaintiff's medical need for dentures. Dr. Ferrell's failure to inform the Committee that Plaintiff's dentures were broken by a prison official and not replaced may at best constitute negligence, which falls short of stating a claim for deliberate indifference. *Gobert*, 463 F.3d at 346.

Second, Plaintiff alleged that Mr. Martisek made promises to Plaintiff he would look into his issue with the broken dentures and present all relevant documents to the Committee on Plaintiff's behalf. Plaintiff, however, offers no allegations to suggest that Mr. Martisek was aware of a serious risk to Plaintiff's health based on Plaintiff's lack of

dentures. Mr. Martisek's failure to follow through on his promise suggests negligence at best and does not rise to the level of deliberate indifference to Plaintiff's health.

Thus, even when taking Plaintiff's allegations as true and in a light most favorable to him, they fail to indicate either a serious medical need for replacement dentures or that Defendants acted with the requisite deliberate indifference to any such serious medical need.[3] Plaintiff, therefore, has not stated a plausible claim of deliberate indifference in this action.

## V. RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that Defendants' Rule 12(b)(1) and 12(b)(6) Motion to Dismiss (D.E. 12) be **GRANTED** and that Plaintiff's deliberate indifference claims against Defendants be **DISMISSED with prejudice** for failure to state a plausible claim for relief.

ORDERED this 30th day of March, 2018.

_Jason Libby_
Jason B. Libby
United States Magistrate Judge

---

[3] Plaintiff has named two individuals as defendants who lack the authority to provide him with the injunctive relief he seeks, which is replacement dentures. Rather, it appears that members of the Committee retain sole authority to decide whether Plaintiff should receive dentures. While Defendants have not argued that they lack authority to provide Plaintiff with his requested injunctive relief, such argument serves as another basis to dismiss Plaintiff's deliberate indifference claims.

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).